2010-7092 AVGOOSTIS against the Department of Veterans Affairs Mr. Raven Sean Raven for Mr. AVGOOSTIS May it please the court, good morning. There are two issues in this case. There are two paramount, two very large issues. The first issue is whether or not 24.1 to 24.12d the Aegis Statute has eviscerated common law privilege of attorney-client privilege and whether or not that's been eviscerated. This is a question of statutory interpretation and the government's position in this case is that privilege does not survive the statute. Under the statute, petitioners for attorney fees do not have the right to keep their communication between attorney and client as privileged and confidential. But is that issue necessarily before us? I read the government's position in that regard as sort of being an alternative. That it's not implicated here. If it were, then privilege wouldn't trump the statute. But it's not really implicated here, is it? If the court were to decide that and to hold that the statute is a waiver, is a partial waiver of sovereign immunity and that the government never, that privilege never applies whenever the government has a waiver of sovereign immunity, then the other question as to whether or not the topic of attorney-client privilege is confidential would be moved. The second issue, the issue about the issue about attorney-client privilege goes to whether or not the topic or generalized topic of communication is ever privileged. And it's Mr. Augusta's position that privileged communication can never be summarized, encapsulated, or generalized without breaking that privilege. Well, you would certainly concede, I suppose, that the privilege would not protect against disclosure of the subject matter for the representation at a certain level of abstraction. For example, if Mr. Augustus was consulting a particular lawyer, not only in connection with the criminal matter, let's say, but also in connection with his DVA proceeding, it would be necessary for the lawyer to identify those hours that were devoted to the DVA and do so by reference to subject matter, correct? Not necessarily, because when writing each petition, counsel only include hours that are relevant for that case. Which means that counsel is revealing that these are times that were employed for consultation on the VA case and not on something else, right? So it is a revelation of subject matter at that level of abstraction. Subject matter being the DVA proceeding. On a very abstract level, in any type of itemized entry, if it says draft client correspondence, then there's easily an assumption that the client correspondence correlates with the case for which there's an EJFE being filed. What about the examples that the current appeals for veterans claims gave on page 4 of the opinion, which are extremely general? How do those examples cut into the attorney-client privilege? Under the model rules of professional conduct under 1.4 and 1.6, you have the definition of both confidentiality and communication. What the veterans court has asked is more than simply, did you inform your client? Did you respond to questions about certain matters? But once you go beyond what is expected under 1.4 or 1.6 in your description, then you're generalizing the privilege. You're generalizing privilege communication. So if I were to say, for example, this is an example, discuss the joint motion for remand with my client, that may seem absolutely harmless, innocuous, and just have absolutely no privilege whatsoever because it's just so general. The problem with that is, what if my client were to write to me and say, I think I committed fraud when I testified. Do I have to write back in my generalization, discuss fraud with client? But I'll tell you what the problem is, that's not this case. If there were an issue about that, you might well have a point. But take the examples that are on page four of the court's decision. How does any of those examples disclose something which should be protected? Let me go to page four to answer your question. It's page 11 on the joint appendix, and I see the examples. For example, the entries do not distinguish between communicating, communications updating the client as to the case's status. Take those one at a time. How does updating the client as to the case's status reveal confidential materials? That wouldn't reveal confidential, but that wouldn't reveal any confidence. However, the problem is that when you write draft client communication, or draft client correspondence, if you add simply update, update client, or answer questions, then that wouldn't. I would concede that wouldn't. The problem is that when you get into more specifics about their generalizations, the government will come back and say, what are you updating the client about? What? What did you say in a general sense? Well, if they did that, that might be a problem. But I don't know that they're taking that position. I didn't see in their brief a requirement, in their view, for that level of specificity. They seem to be parroting the examples that are given in the court's opinion. Okay. If the court were to decide that there needs to be additional specificity under the statute, under itemization, simply saying draft client correspondence to update on case status to answer questions, then I would concede to you that that doesn't reveal any privileged information. But it actually goes much further than that, though. And I think that this case is a case that actually goes into privilege in asking what the subject matter is. Because the issues that were briefed is whether or not there's an obligation to talk about the general, the general nature of client communication. And if that's, and I would concede that privilege is not implicated if you're simply writing an itemized statement updating case, answering questions, responding to inquiry, then that doesn't implicate anything at that point. But I don't think that this is this case. And I would respectfully disagree with you because it's more than that. It's about what are you updating about? Because it doesn't give enough information to the government to say whether or not that's a reasonable time. So if you were to read the court's opinion as saying this level of generality on page 4 would be sufficient, then you agree that that's not invading the attorney-client privilege. Sure. I would concede that if that was it and it stops right there, then this case is over, I should go home, and that's all we need to write. But it doesn't stop there because the whole purpose of this decision is that you're not explaining enough or giving enough detail to the government to determine the reasonableness of the fee. And they're going to, they are asking, in my view, what the general nature of the correspondence is. And that general nature is privileged. And I think that's what this case is about. When you say general nature of the correspondence, let's take again, you referred to the joint motion, discussion of the joint motion. The court identifies discussing the terms of the proposed joint motion. Are you suggesting that that would be unduly intrusive? Yes. Absolutely. Because the problem is that you're talking about the topic of communication, not what your action is, not the purpose of the communication. If the topic is to discuss the client's letter regarding fraud, then I'm breaching confidentiality and informing the government that my client thinks that there might have been fraud involved. And that's going to diminish the full, frank discussion between attorneys and clients. Let me ask you one question unrelated to, at least not directly related to the privilege issue. The court, and I'm looking at page three of the court's opinion, at the paragraph just before the beginning of the discussion of attorney-client privilege, seems to predicate its decision in part on the fact that the charges for the 26 instances of client correspondence were all for 0.2 hours. And the court said that's not enough specificity with respect to time, i.e. we don't know whether there could have been telephone calls that lasted two minutes and were just billed at 0.2. That doesn't seem to have anything to do with the attorney-client privilege. Or if it does, it seems awfully strained. What do you say with respect to that ground of decision to the extent that it is a grounded decision from the court? First off, this is the first case that comes to the court on this topic. Before the Veterans Court, the U.S. Court of Appeals for Veterans Claims, there is a case that has currently stayed in a panel decision pending the outcome of this case. It's called Thomas v. Shinseki. And this happened after this case, after the briefs were already filed in this case. And the court was made aware that this case was being heard, and it stayed its own panel decision. That case actually would deal more with the general topic of general subject matter jurisdiction, general attorney-client privilege. But in answer to your question, in future petitions, it was made more clear that 0.2 or 12 minutes was a time that was capped as a reasonable exercise of billing discretion. Since the itemization could not describe attorney-client material as a matter of billing judgment, it would not, the attorney decided not to charge or bill for more than 12 minutes for any communication, regardless of how long it was. But that also suggests that even if the call took 5 minutes, it would still bill for 10 minutes, just because of the way the billing system works. But those... It's true, right? It would be, except for the fact that it stated that any time less than 0.2 would not be billed. Where, where, that's in the record in this case? I don't believe so in this, in this fee petition. I didn't see anything to that effect. But it was, it was obviously something that was rectified for future fee petitions. And, and that would be a legitimate basis for the government or for the, to challenge and for the court, and I would concede that, to reduce without clearly understanding that these times are not billed. Well, I'm sorry. I'm not following this. Who makes the decision that something below 0.2 is not billed? That would be the attorney's discretion, his reasonable billing discretion. So it could vary from attorney to attorney? Yes, it could. But if the EJIT petition were to specify that any time spent less than 12 minutes in client communication is not billed, or as in later petitions, identifying non-billed communication to give, give the government and the court an idea of all the entries that were not billed. Does the fee petition here say that? Not this one. No. No. Not this one. You're into your rebuttal time. Why don't we save the rest of your rebuttal time and we'll hear from the government. Thank you. Good morning, your honors. May it please the court. Mr. Augustus suggests that the specificity can never be capsulated without breaking that privilege. The attorney-client privilege is always broken when the level of detail the veteran's court's asking for here is provided. But in this case itself, Mr. Augustus provided that level of detail. If we look to joint appendix page 39, after the government challenged the EJIT application as not providing sufficient detail, Mr. Augustus provided that level of detail to, with respect to a couple of different, of these particular itemized charges. For example, Mr. Augustus said that 48 minutes was necessary to communicate with the client when initially retained. 48 minutes was necessary to communicate with the client regarding the significance of the summary of issues that was prepared. And one hour was to discuss a joint motion to remand and the attorney fee application. And that's going over into joint appendix page 40. So, Mr. Augustus himself has provided, in this very case, the level of detail that the veteran's court's asking for here. Now, were these periods that were granted? It's not entirely clear. The veteran's court granted 2.7 hours worth of communications time and didn't grant two and a half. This is 2.6 hours. So, it looks like, yes, the veteran's court didn't explicitly say, these are the times I'm granting and these are the times I'm not. But the award from the veteran's court included sufficient time to encompass all of these communications. So, the government would concede that these are the kind, or would assert, or I should say, these are the kinds of descriptions that the veteran's court was asking for. The veteran's court's not asking for some level of specificity, not asking for a transcript of all the communications between the attorney and the client. In other words, the government would be satisfied with the level of detail provided on page four of the court's opinion. Yes, Your Honor. Our view is that that's exactly what the veteran's court was asking for and Mr. Augustus ultimately provided with respect to some of these line items, but not as to all. It's unclear in this case what general proposition of law Mr. Augustus is suggesting that this court should provide. He proposes a couple of specifics. He says that on remand, if this court were to agree with Mr. Augustus, then the veteran's court should look to the totality of the circumstances and say half an hour a month is, as a matter of law, reasonable. Or he says that the veteran's court should compare the docket sheet versus the individual entries that he's provided and just look at the time and would note, the court would then know that this .2 hours is related to a summary of issues and this .2 is related to the reply brief, etc. This court's explicitly rejected both proposals in Napurano-Iron. This court said, and I'll quote, that's at 825 F second 403. This court said, we reject unequivocally any suggestion that the claims court had an obligation to reconstruct the bills for Napurano. And that's exactly what Mr. Augustus is suggesting the court need to do here by comparing the docket sheet against his bill. And this court also said, in that same case, on page 404, the statute does not permit an interpretation that an unreasonable charge for an item is somehow made reasonable by the total amount requested. There, Napurano-Iron was suggesting that three hours a week over the course of the litigation was, as a matter of law, a reasonable amount. That's not unlike Mr. Augustus' argument here that 30 minutes a week is reasonable. But this court rejected that level of generality, saying that the itemized requirement in EJIA requires line-by-line description of what is done. And the veterans court and all trial courts need to look to each line item and determine whether that line item is reasonable. Well, but the question is, what level of specificity is required? I'm not sure that I understand what is accomplished by requiring the specificity that was referred to in the veterans court's decision as opposed to the one with level of specificity that was provided in the fee petition. It doesn't seem to accomplish very much. The veterans court said that looking at these 26 entries, it likely includes some overbilling. And that's at page 3 of the veterans court's opinion. I don't know what the basis for that is. I think the problem, Your Honor, is that the veterans court couldn't tell. And there's just a list of 0.2 hours communication, 0.2 hour communication, 0.2 hour communication, without specifying what it was about. The court can't tell. Well, no, that's not quite true. There are some descriptions here. Review client correspondence, draft client correspondence, you know, so on and so forth. Yes, Your Honor, all the correspondences are listed as draft client correspondence or review client correspondence. Those are the specific items at issue. Those are the ones the veterans court said that it couldn't tell whether they were reasonable and said it likely included some overbilling. The problem is here, using the same petition, if Mr. Augustus had three additional entries for 0.2 hours, it said also draft client correspondence. The veterans court would have no way of knowing whether that was an error, an overbilling or not. Your Honor, it just, it strikes me that this is arguing about something which really doesn't matter that much, that the level of specificity in the fee petition, as opposed to the level of specificity that the court was requiring, doesn't really give the court a much better basis for judging the reasonableness of the fee. I just don't, I'm having trouble following that, why this is so important. Well, the Supreme Court said in Hensley that the trial court has broad discretion to make this determination of reasonableness and needs to exclude any overbilling, any duplicate entries. And this court felt that in this case, the court needed a little bit more specificity in order to determine whether each of these entries was reasonable. Yeah, but my point is that the level of specificity required by the veterans court doesn't enable you to make any better review of the fee petition than the level of specificity that was actually provided. I mean, this all seems to be highly theoretical rather than practical. No? I think not, Your Honor. If the veterans court has, with respect to each of these correspondence, just a little bit more detail, and the veterans court knows this is correspondence about being retained, this is correspondence about the summary of issues that was drafted, and this is correspondence about the attorney fee application, then the court can look to that and say, well, 0.2 hours for that is reasonable, or 0.2 hours for that is too much. And the court can tell whether that's reasonable. The specifics of this application, I should point out, are not before this court because this court, of course, can't reach the application of law to fact. So the only thing this court can do is look to overall, is there a general proposition of law that can be announced by this court? No, that's not true. I mean, we have plenty of cases that say when the facts are undisputed, we can make a legal determination. Here's a situation where the facts are undisputed. We can help to define what the standard for judging that is. Yes, Your Honor, to the degree this court could say, here's a rule of law that's generally applicable. But the problem is to say, for this court to say, draft client correspondence as a matter of law is reasonable, then the veterans court, in future cases, will have lists of fee petitions that simply say draft client correspondence without additional detail. And as a matter of law, this is reasonable. We respectfully think that goes against what the Supreme Court said in Hensley, that the district court has broad discretion to determine the reasonableness in any particular case. So it's an application of law to fact as to each individual case, whether the petition before the court was reasonable. And it's hard to see what the rule of law is that this court could establish that would provide greater specificity to that question for future courts. Because, again, all that's provided here is draft client correspondence. I don't know that Mr. Epgustis is saying, as a matter of law, draft client correspondence is a sufficient entry. And I'm not sure, again, I'm not sure what he's suggesting that this court needs to say. Because the veterans court in this case has already said that he couldn't tell, looking at this application, he couldn't tell whether this was reasonable. And that's a question for the veterans court's discretion to determine whether this is reasonable. And perhaps I would look at it, or your honors would look at it and say, well, we think this is reasonable, or this is not. But the veterans court said, this isn't enough detail for that court to decide. What support do you have for the notion that the EJIS statute cuts into the attorney-client privilege? The government's position, your honor, is that it doesn't cut into the attorney-client privilege. Nothing that the veterans court's asking for here is, in fact, privileged. But it's a general proposition? Because I guess I misunderstood your brief then. I thought in your brief the undertow was that we don't care if it violates privilege, and that's the attorney's problem. I thought your suggestion was if they don't want to disclose something, then they don't have to ask for the fees. But if not, they open themselves up to violating attorney-client privilege. Am I misreading that? No, your honor. I think you correctly described our brief in response to one of the questions, one of the issues earlier, when you said that what we were doing was providing an alternative. We believe, the government's position is, that there is no conflict here between privilege and EJ. But if there were a conflict, then EJ would trump. If there were a case where the itemized list requirement of EJ comes into direct conflict with the privilege because the attorney, the petitioner's attorney is saying that the specifics in that case would implicate the privilege and that no itemized list is going to be required. They're going to be provided, for example. If the petitioner said, I can't provide an itemized list here. If I provide an itemized list, then I'm violating the privilege. And in that case, then yes, the government's position is that EJ trumps because EJ specifically requires an itemized list. So in that case, no fees are going to be granted. Contrary to the argument that you gave to me a moment ago, I mean, we're supposed to say that in some cases, but not all cases, that EJ negates the attorney-client privilege. How are we supposed to know when that happens? This court could certainly say that there is no conflict between EJ and the attorney-client privilege. None of what the Veterans Court's asking for in this case is privileged information. There could be, there's conceivably a case where there's a conflict. This isn't that case, and this court needn't reach that. Well, you'd have to, I suppose you could start with the proposition that Congress could say explicitly that for fee petitions in a particular area, there shall be no attorney-client privilege. And sort of a constitutional problem with that, which would, since it's not a criminal case, it would have to be under the Fifth Amendment. But short of a constitutional problem, that would be that. But I would suppose that since Congress didn't explicitly say that, it would seem likely that Congress was not intending to override the attorney-client privilege sub salientia. That's a pretty important privilege. You would have expected them to say something. So accommodating the statute to the privilege would be the normal course, I would expect. It would seem unlikely that a court looking at a fee petition would assume that EJA overrode the attorney-client privilege, in which case as long as there isn't a violation of the actual privilege, then there's no issue. We agree, Your Honor. And we don't think there's any conflict here. And when we... Are you aware of any... I mean, EJA's been around for a while, and of course there are fee petition cases in the civil rights area that have been around for a lot longer than that. Are you aware of any other cases in which this issue has been litigated as to whether the fee application specificity issue has been argued to be a violation of attorney-client privilege? There are only a handful of cases that we've been able to find where privilege and the specificity required by any fee application are even discussed in the same case. And those are cited in our brief. Generally... Nothing has actually decided this issue, as far as I can tell. No, Your Honor, and I think that goes to the general point that generally speaking, there doesn't seem to be a conflict here. And Mr. Augustus makes the same point that none of the cases that the government cited are directly dealing with both fee applications and privilege. But our point is that that points out that the two just simply aren't in conflict, and it's not a question that's often presented to the court. And here, again, to this specific case, Mr. Augustus hasn't pointed to a specific reason why what the Veterans Court's asking for in this particular case would violate the privilege. Instead, he's pointing to a general proposition that communications are privileged and that the Veterans Court's asking for communication. But as we pointed out in our brief, a number of circuits have said that generally speaking, providing the general subject matter is not privileged. Thank you very much, Your Honor. Mr. Raven, you have about two and three minutes. The problem with the Veterans Court decision is that if you look on page four, as you alluded to before, it's asking for that much more specificity than simply what's in the model rules under 1.4 or 1.6. Discussing the terms of the post-joint motion for remand is discussing a subject or discussing the general nature of the correspondence. And that would seem to violate attorney-client privilege because how would an attorney respond to or detail a letter to his client discussing fraud and whether or not fraud is involved in any particular matter? That would obviously seem to breach attorney-client privilege. Simply providing generic information is no different than saying drafting client correspondence or reviewing client correspondence. It's all related to the case. It doesn't seem to provide any additional information to the government that would be helpful for them to determine reasonableness. And the amounts are so small at 12 minutes, it seems like that would be a reasonable exercise of discretion to cap it at that level, and the court need to find that the time is reasonable. That's simply it. And EGIS simply does not trump the privilege. Very well. Thank you.